Phares Yeager *v.* Thomas F. Cassidy, Administrator of William Cassidy, Deceased, Appellant.

*Evidence—Alteration by consent of terms of lease—Question for jury.*

Where the parties to a written lease agree between themselves to note thereon an alteration of its terms, the lease as altered need not be established by the testimony of two witnesses ; the fact of the alleged alteration and its bona. fides are for the jury..

*Practice, C. P.—Defective assignment—Neglect to take exception.*

Where no exception was taken to the admission of certain testimony, assignments of error to such admission must be dismissed.

*Evidence—Scope of cross-examination—Discretion.*

The extent to which a party may go in cross-examination as to irrelevant matters, for the purpose of testing the accuracy of recollection or the bias of a witness, is one of those matters largely discretionary with the trial judge.

Argued Nov. 15, 1899. Appeal, No. 156, Oct. T., 1899, by defendant, from judgment of C. P. Lancaster Co., Aug. T., 1897, No. 47, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Per Curiam.

Replevin. Before LANDIS, J.

The facts sufficiently appear from the opinion of the court below refusing motion for a new trial, which was as follows :

The defendant's counsel have assigned ten reasons why a

new trial should not be granted in the above case. We do not think any of them should be sustained, but they are, nevertheless, entitled to the careful consideration of the court. In weighing them, however, it is necessary to keep in mind all the facts proven in the cause, and the distinct issues which were raised by the testimony and considered by the jury.

During the progress of the trial the plaintiff produced (and the defendant subsequently offered in evidence) a written lease, dated March 24, 1896, made between Mary Yeager, lessor, and Phares Yeager, her son, the plaintiff, as lessee, whereby she leased to her said son her farm in Colerain township for a money rent of $250. Under this lease as it stood when offered in evidence, Mary Yeager was to have the crop of wheat then in the ground and Phares Yeager was to have the way-going crop or the crop he himself should put in. But this lease showed certain alterations on its face, and it therefore became incumbent on the plaintiff to explain them. Mrs. Yeager testified that originally the lease was drawn so that her son was to have the crop in the ground, and he was to leave in the ground as much as he found, but that about April, 1896, and long before the execution issued against her, they together agreed that a change should be made, so that she might receive the crop in the ground, and he should take the way-going crop, and that this was thereupon by them at once put in the lease as it now appears. The defendant claims that this was an alteration or contradiction of a written paper which required the testimony of two witnesses to sustain it, otherwise the paper must remain as it was first written. It is difficult to see how, in view of the above facts, the truth of which was fairly submitted to the jury, there can be any such application of the law. It is not an open question that to change, vary or reform a written instrument the agreement must be shown by evidence that is clear, precise and indubitable, and then only by the testimony of two witnesses, or of one witness corroborated by circumstances equivalent to another: Thomas v. Loose, 114 Pa. 35.

But here there was no attempt to change the written instrument by parol. It was merely an explanation of the alteration appearing on the face of the paper. "When the interlineations were made was a question for the jury:" Heffelfinger v. Shutz, 16 S. & R. 44; Robinson v. Myers, 67 Pa. 9.

In Hogan's Estate, 181 Pa. 500, 513, an interlineation was made in a mortgage, and the auditor says: " The interlineation was clearly a mistake of the party filling in the blanks, and has been explained by him to the satisfaction of the auditor." See also Nesbitt v. Turner, 155 Pa. 429.

If Mrs. Yeager and her son, the only parties to this lease, at a time when no one else was interested, saw fit to change their original agreement, and actually did so in writing, in the lease which they had previously executed, what right had Cassidy, or any one else, to complain, and especially so as he was only the vendee of the sheriff's vendee and received no title to the land until almost a year after the change was made. If it was not done at that time, and was fraudulently conceived to prejudice Cassidy, he had had a right, all other matters being favorable to him, to have what would ordinarily have passed by the sheriff's sale through his vendee to him as the property of Mrs. Yeager. The bona fides of the transaction, however, was a fact which the court was obliged to submit to the jury, and as they have found in favor of its honesty there the matter must rest.

The age of the plaintiff at this time could not seriously affect the issue, for the mother and son could legally make this agreement if they saw fit to do so. It was, however, a fact to be considered by the jury with all the other testimony in coming to a correct conclusion on the merits of the case.

The next question raised is that A. L. Herr, the purchaser at the sheriff's sale, took, by reason thereof, all crops which were put into the ground between the issuing of the writ and the execution of his deed, and that by his deed to Cassidy he in like manner transferred to him the same rights. This would be true in case Mary Yeager had been the owner of the wheat at the time of the sheriff's sale, for it would then have passed by the sale to A. L. Herr, and if he, without restriction, sold the land to William Cassidy, Cassidy would have been entitled to the crop. But the facts in this case do not sustain the proposition presented by the defendant. The jury have found that Phares Yeager was the tenant of Mrs. Yeager, and, under the lease, was entitled to put in a crop and receive the fruits of it as a way-going crop. This crop was therefore personal property as to him and did not pass with the land. If the property

had been farmed for rent reserved the subsequent purchaser of the landlord's title would be entitled to the rent falling due after the acknowledgment of the sheriff's deed whether it was payable in money or grain: Long v. Seavers, 103 Pa. 517; Herr v. Binkley, 8 Lanc. Law Rev. 234.

But if no rent is due the tenant's rights for that reason cannot be interfered with.   It was also shown that the agreement between Herr and Cassidy contained no reservation of the grain, but Herr testified that at the time it was executed it was distinctly understood that Cassidy was not purchasing the wheat, as it belonged to Yeager, the plaintiff, and not to Herr, and in this he was corroborated by the testimony of Ross Collins, who was subsequently sent to purchase the wheat from Yeager, and by Clyde Montgomery and Christian Shaub, both of whom stated that Cassidy told them he was going to buy the wheat. Under these circumstances it was proper to submit the facts to the jury for them to pass upon.   See Ferguson v. Rafferty, 128 Pa. 337, 356, and Cloud v. Markle, 186 Pa. 614.

The fourth, fifth and sixth reasons assigned have no merit. Courts are for the purpose of administering justice, and no man should be deprived of his just dues by legal technicalities when it is in the power of the court, in a proper manner, to correct a mistake before any injury is done.   In this case the testimony was closed without any proof as to the value of the wheat. This being an action of replevin, and the defendant having given bond to retain the goods, the bond stood in place of the goods, and therefore the verdict, if against the defendant, necessarily could only be for the damages, which under the law should be ascertained by the jury: Harrisburg Electric Light Co. v. Goodman, 129 Pa. 206; Shoemaker v. Shoemaker, 7 Kulp, 528; Etter v. Edwards, 4 Watts, 63; Chaffee v. Sangston, 10 Watts, 265.

The testimony having closed with this omission of proof, when the point was raised by counsel for the defendant the plaintiff requested to reopen his case in order to produce the proper proof.   This the court permitted, and also permitted the defendant to introduce countervailing testimony on the same point.   The admission of testimony is always in the discretion of the court, and, while a case should not be reopened for the introduction of proof for slight reasons, yet it should

236 YEAGER *v.* CASSIDY.

Opinion of Court below—Assignment of Errors. [12 Pa. Superior Ct.

always be done when it is necessary to carry out the ends of justice. This evidence of damage having been heard by the jury and passed upon by them, it is not the duty of the court to interfere with the verdict. The rule for a new trial is, therefore, discharged.

Verdict and judgment for plaintiff for $222. Defendant appealed.

*Errors assigned* were (1) in answer to defendant's second point, which point and answer were as follows: " 2. The lease between Mary Yeager and the plaintiff, Phares Yeager, being an instrument in writing and was proven by the plaintiff's evidence, cannot be set aside except by the testimony of two witnesses, or testimony equivalent to that of two witnesses, which was not done in this case, and, therefore, said lease stands as executed before the erasures were made upon it by Mrs. Mary Yeager. *Answer:* This point under the facts of the case is also refused. The lease was solely between Mary Yeager and her son, Phares Yeager. They had a perfect right to subsequently modify it as they saw fit, and the lease shows that it was changed in writing. The defendant's intestate has no right to question such changes or modification or call for proof, as stated in this point." (2) In its answer to defendant's third point, which point and answer were as follows: " 3. By the terms of the written lease before the erasures were placed upon it, Phares Yeager, plaintiff, had no right to the wheat in the ground, which is the wheat in dispute. *Answer:* This point would be correct if the lease had remained unchanged, but it will be for the jury to find whether or not the lease was changed by the parties and altered in accordance with their subsequent agreement, from the testimony which is before you. If they in good faith did this, Phares Yeager would have the right to the wheat." (3) In allowing, against the objection of the defendant, Mary Yeager, to testify against the agreement in its original form. (4) In disallowing the following question which was asked by defendant on cross-examination of A. L. Herr, plaintiff's witness, sworn in this case: " Q. State whether or not some time after this agreement was made you went to him (meaning R. C. Collins) and offered

him, or told him, you would give him $10.00 if he would give you this agreement? Objected to by plaintiff's counsel. Objection sustained. Bill of exceptions signed, sealed and filed for the defendant."

*D. F. Magee* and *B. F. Davis*, for appellant.—The position of the defendant in this case, briefly stated, is as follows:

At the time of the sheriff's sale on November 14, 1896, the wheat in the ground was the property of Mary Yeager, the defendant, in the judgment upon which the property was sold as evidenced by the terms of the lease to Phares Yeager as originally drawn. It being the property of Mary Yeager at that time it passed to the sheriff's vendee, A. L. Herr: Hershey v. Metzgar, 90 Pa. 217; Long v. Seavers, 103 Pa. 517.

Having passed by sheriff's deed to A. L. Herr, it was sold with the land to William Cassidy by a written agreement, in which no reservation of the wheat was made, and, moreover, deed was given and possession was given to Cassidy at least three months before the time of harvesting this crop: Backentoss v. Stahler, 33 Pa. 251; Burns v. Cooper, 31 Pa. 426.

To contradict or alter a written instrument the evidence must be clear, precise and indubitable: Kirk's Estate, 5 Montgomery, 107; Glass Co. v. Storms, 125 Pa. 268.

In Van Voorhis v. Rea, 153 Pa. 19, Justice HEYDRICK said: "The defendants, not denying the writings nor alleging fraud, accident or mistake, undertook to show by one of their number that the contract was something different from that which was written. This they could not do by the uncorroborated testimony of one witness, flatly contradicted by the plaintiff or even uncontradicted:" Thompson v. Christie, 138 Pa. 230; Mifflin Co. Bank v. Thompson, 144 Pa. 393; Wyckoff v. Ferree, 168 Pa. 261.

*W. U. Hensel,* for appellee.—There was no attempt to change the written instrument by parol. It was merely an explanation of the alteration appearing on the face of the paper. "When the interlineations were made was a question for the jury:" Heffelfinger v. Shutz, 16 S. & R. 44; Robinson v. Myers, 67 Pa. 9.

In Hogan's Estate, 131 Pa. 500, 513, an interlineation was

made in a mortgage, and the auditor says: "The interlineation was clearly a mistake of the party filling in the blanks and has been explained by him to the satisfaction of the auditor." See also Nesbitt v. Turner, 155 Pa. 429.

PER CURIAM, January 17, 1900:

This was an action of replevin for a crop of wheat. The plaintiff claimed it by virtue of the provisions of his lease from Mary Yeager, the owner of the land. The defendant claimed it as the administrator of William Cassidy, who obtained title to the land from A. L. Herr who had bought the same at sheriff's sale on November 14, 1896, under an execution against Mary Yeager. The facts, out of which the main questions to be decided on this appeal arose, are so clearly stated in the opinion of the learned judge of the court below, refusing a new trial, that we adopt his statement without substantial change. He says: "During the progress of the trial the plaintiff produced (and the defendant subsequently offered in evidence) a written lease, dated March 24, 1896, made between Mary Yeager, lessor, and Phares Yeager, her son, the plaintiff, as lessee, whereby she leased to her said son her farm in Colerain township for a money rent of $250. Under this lease as it stood when offered in evidence Mary Yeager was to have the crop of wheat then in the ground and Phares Yeager was to have the way-going crop or the crop he himself should put in. But this lease showed certain alterations on its face, and it therefore became incumbent on the plaintiff to explain them. Mrs. Yeager testified that originally the lease was drawn so that her son was to have the crop in the ground, and he was to leave in the ground as much as he found, but that about April, 1896, and long before the execution issued against her, they together agreed that a change should be made so that she might receive the crop in the ground and he should take the way-going crop, and that this was thereupon by them at once put in the lease as it now appears. The defendant claims that this was an alteration or contradiction of a written paper which required the testimony of two witnesses to sustain it, otherwise the paper must remain as it was first written."

The refusal so to charge is the subject of the first two assignments of error.

1. It must be observed that this was not the case of an attempt to reform or set aside a written instrument by parol evidence of what took place at, or before, its execution, but of a change in one of the stipulations of a contract by a subsequent agreement of the parties. Cases of the former class involve equitable principles, the application of which must necessarily be the same no matter whether the proceeding be in a court of equity or in a common-law court exercising equitable powers. Cases of the latter class involve simply the common-law right of parties to change their contracts, and are governed by the rules of law and evidence that govern the making and proof of contracts. The cases cited by the defendant's counsel apply to cases of the former, not the latter, class. If these parties had put their subsequent agreement in a separate writing it could not be contended that the execution of the paper must be proved by two witnesses. Instead of doing that they evidenced their agreement by the erasure of some words and the interlineation of others in the original agreement. The new agreement was supported by a sufficient consideration, and its validity cannot be questioned. See Gallagher v. Stern, 8 Pa. Superior Ct. 628. The mode of evidencing it may not be a desirable one, but it was not illegal. As the learned judge well says, if the parties to this lease at a time when no one else was interested, saw fit to change their original agreement, and actually did so in writing in the lease which they had previously executed, the defendant had no right to question the validity of their act. Of course, the facts involved in this proposition, and the bona fides of the transaction were to be determined by the jury, but it was not error to refuse to instruct them that they must be established by the testimony of two witnesses.

2. As no exception was taken to the admission of the testimony of Mary Yeager, the third assignment must be dismissed. We remark, however, that the cases cited in support of it— Lessee of Packer v. Gonsalus, 1 S. & R. 526, and Hoffman v. Lee, 3 W. 352—relate to the admissibility of declarations of a vendor made after he has parted with his title, not to his competency as a witness.

3. The relevancy of the fact alluded to in the question put to A. L. Herr on cross-examination (fourth assignment) is not apparent, and the extent to which a party may go in cross-

examination as to irrelevant matters for the purpose of testing the accuracy of recollection, or the bias, of a witness, is one of those matters which, in a degree, are discretionary with the trial judge: Clark v. Trinity Church, 5 W. & S. 266. Other cases might be cited, but it is unnecessary. There is no such manifest error in the ruling complained of as would justify us in reversing this judgment. The case was fairly submitted to the jury and the evidence fully warranted their verdict. There is no valid reason for setting it aside. All the assignments of error are overruled, and the judgment is affirmed.