# Winans v. Bunnell.

*Appeal—Charge of court—Harmless error.*

Where the one question of fact upon which the jury were called upon to pass was presented to them in terms which could not have been mis-- understood, the appellate court will not reverse for harmless error in: admission of testimony; nor for specification of error as to a portion of' the charge which wrested from its context might seem to be inaccurate,. but when considered in connection with the language which accompanied it, was not improper to be used.

*Parol contract—Question for jury.*

When two parties disagree as to the terms of a parol contract and their testimony is wholly irreconcilable, the jury must determine which of them. is to be believed.

*Evidence—Subsequent explanatory parol agreement.*

There is no attempt to vary the terms of a written instrument, by proof of an antecedent or contemporaneous parol agreement, where the parol testimony conclusively establishes a parol agreement subsequently made for the purpose of carrying into effect the original contract of which it is. explanatory.

Argued Jan. 11, 1900. Appeal, No. 34, Jan. T., 1900, by defendant in a suit of George G. Winans against L. M. Bun- nell, from judgment of C. P. Lackawanna Co., Sept. T., 1896,. No. 393, on verdict for plaintiff. Before RICE, P. J., BEAVER,. ORLADY, W. W. PORTER, W. D. PORTER and MITCHELL, JJ.. Affirmed. Opinion by W. D. PORTER, J.

Assumpit. Before EDWARDS, J.

It appears from the record that defendant, Bunnell, had an interest in land in New Hampshire which was believed to. contain valuable deposits of gold. He sold to plaintiff the privilege of opening a mine on the land and taking therefrom. twenty tons of ore and having the same tested to ascertain its. value; for this privilege plaintiff paid defendant $1,000 in hand, also $50.00 additional, which was about what Bunnell had previously expended or become liable for. In the event of Winans purchasing he was to pay the sum of $150,000, of which the hand money was to be part. If he decided not to purchase then the $1,000 was to be returned to him by Bunnell. Plaintiff decided not to exercise the option and

brought suit to recover the $1,000 paid under the contract. Defendant set up a parol contract alleged to have been subsequently entered into by which he was to be compensated for the expenses amounting to $800 or $900 in getting out the ore to be tested by plaintiff on account of which a payment by Winans of $375 was admitted. Plaintiff contended that the expense of getting out the ore was not to exceed $500.

[At the trial on objection of plaintiff's counsel, the following question asked by defendant's counsel on cross-examination of the plaintiff was ruled out: " Now it is for that, that you are bringing this suit, is it, because he did not pay you back?

Mr. Comegys: We object to that, the record is the best evidence.

The Court: I sustain the objection.] [1]

Plaintiff submitted among others the following point :

[1. If the jury believe that the amount of expenses for testing this land for gold was fixed and limited by the agreement and understanding of the parties, to the sum of $500, then the plaintiff may recover the difference between the sum of $500 and the sum of $1,275 paid by the plaintiff to the defendant with interest from the time when it should have been paid. _Answer:_ Under the contract $50.00 was to cover the expenses to January 2, 1894. If this part of the contract was not changed afterwards by the parties the $1,275 mentioned in this point should be reduced to $1,225. Thus qualified the point is affirmed.] [2]

Defendant submitted the following point:

[There is no evidence in the case sufficient to warrant the jury in finding the expenses to be incurred by the defendant, Bunnell, were to be limited to $500. _Answer:_ This point is refused.] [3]

The court charged the jury in part as follows :

[We will allow the contract to go out with you, so that you can examine it for yourselves, although the construction of a paper of this kind is generally for the court; at the same time, in this case you will be entitled to read it for yourselves, so as to find out what the conditions were under which this contract was executed.] [4] . . . .

[The most important question in this case is as to under

445, (1899).] Charge of Court—Opinion of the Court.

what arrangement Mr. Bunnell was to superintend the work of mining this twenty tons of ore at the mine in New Hampshire. Was there any limit to the amount of expenses which should be incurred in this mining? Now you have heard the plaintiff's testimony on that point. Mr. Winans says that there is no dispute about the fact that it was arranged that Mr. Bunnell should go up to New Hampshire to oversee and superintend this work, but he said they talked over the expense as to what it would cost, and they both agreed that the expenses should not exceed the sum of $500.] [5] . . . .

[You have a right to consider the preliminary negotiations between these parties before the contract of January 2 was consummated.] [6]

Verdict and judgment for plaintiff for $883.65. Defendant appealed.

*Errors assigned* were (1) ruling on evidence. (2, 3) Answer to points, reciting same. (4–6) To portions of the judge's charge, reciting same. (7) The charge as a whole was inadequate.

*John P. Kelley*, with him *Joseph O'Brien* and *J. W. Carpenter*, for appellant.

*C. Comegys*, with him *John R. Edwards*, for appellee.

OPINION BY W. D. PORTER, J., April 23, 1900:

This litigation grew out of an option, granted by the defendant to the plaintiff, to purchase a one-half interest in what was supposed to be a gold mine, situate in the state of New Hampshire. Under the terms of the written agreement between the parties the plaintiff was to pay the defendant $1,050, and, in consideration of being allowed time to determine the value and condition of the mine, undertook to mine twenty tons of ore, and to employ the same foreman who had formerly been employed by the defendant, and to transport said ore to some reduction mill to be treated or assayed, and to pay the charges of the chemist who should treat said ore, and to obtain a certificate of the proper person at said mill where the ore should be re-

duced to bullion, the same to be received by and bind the parties as to the value of said ore per ton, upon which certificate it was to be determined whether to purchase or reject the mine, or to make the purchase of the one undivided half interest of the sixty-acre tract upon which the said gold mine and silver mine was located, at the following price for one-half interest, $150,000; $15,000 to be paid within ten days after the report of the assay or the value of the twenty tons of ore is ascertained, or before that, if the showing of the mine shall be satisfactory to the second party (Winans). Within sixty days after the first payment shall have been made, as aforesaid, the further sum of $135,000 shall be paid, by like lawful money as aforesaid, and within ten days thereafter the said first party shall execute a deed, with usual warranty, in fee simple, for one undivided half of said tract of land. " But in case no sale is made, then the sum of $1,000 is to be refunded only, by the first party to the second party hereto within ten days after purchase or no purchase." If the sale is made, the said $1,000 is to be deducted from the last payment of $135,000, but in no event is there any part of the $50.00 mentioned, that amount having been paid out by the party of the first part in November and December of 1893, " and is hereby assumed and is to be paid by the second party, who hereby agrees to pay all the expenses of mining, hauling and delivering on board of cars at the mill, to pay the freight to whatever mill the same shall be sent, and to pay for milling and reducing to bullion the said twenty tons of ore, and pay for the certificate, which shall be the property of L. M. Bunnell."

The plaintiff paid the $1,050, according to the terms of this contract. It is not disputed that the twenty tons of ore have been taken from the mine, transported, treated and assayed in accordance with the terms of the contract. It is admitted that the plaintiff, in accordance with the terms of the contract, exercised his option not to take the mine, and, in accordance with his right under the contract demanded the return of the $1,000. This contract has, therefore, been fulfilled, and, as no sale was made under it, the plaintiff is entitled to his $1,000, unless upon some other and further agreement the defendant is entitled to retain the whole or some part of it. It is undisputed, however, that subsequently to the execution of this agreement a parol

agreement was entered into by the parties, with regard to the manner in which the covenant of the appellee to mine the twenty tons of ore should be executed. The contract provided that the appellee should mine the ore, retaining in his employment the foreman who was already there. This was simply a contract that he would cause the ore to be mined and retain the foreman in his employment, the purpose of the parties being that the twenty tons of ore should be taken out of the mine and taken to some reduction establishment in order that its value might be ascertained, and it did not make any difference what agents the appellee employed to do this work, the only limitation upon him in that regard being that he should continue to give employment to the foreman then upon the ground. It is undisputed that an arrangement was made between the parties, under the terms of which the appellant, instead of the appellee, was to go to the mine, employ the men, make all contracts and take out and ship and have treated and assayed the twenty tons of ore mentioned in the written contract. The parties do not agree, however, as to the terms on which the appellant undertook to do this work for the appellee. The appellant testified : " Q. When did you agree to go up there first? A. That was after the contract was drawn. Q. What agreement was made between you and him at that time, if anything? A. The contract provides, as you can see, that he was to take the men that was already employed and go on and do the work. I had had two contracts with Mr. Winans before that time. Q. What agreement did you have with him at the time of going there ? A. He said he wanted to stay here and do business here, and wanted me to go up, although the contract provided that he should go up. Q. Tell me what was said between you ? A. He says, ' You go up there and get out the ore, you know the men, acquainted there, and you go up and get out the ore and you will receive pay for your time and all your expenses, as the contract provides.' There was nothing further about it, only he was to fulfill that contract; that is all, and he was to go up, but I finally went up at his instance and request. Q. He requested you to go up there ? A. At his instance and request I went up there. Q. You left here on the 18th of January? A. Left the morning of the 18th of January early, the early train for New York." The appellee testified upon this point:

" Q. Don't you know that the first agreement for him (Bunnell) to go up was after you made the contract and about the time you paid him $1,000 ? A. Well, of course, we talked the thing over before we went, considerable talk. Q. When was the agreement made that he should go up there ? A. It was talked about for two or three weeks, I think, before he went. Q. Talking about it and agreeing upon it are two different things. When was the agreement made ? A. About the time it was signed. Q. Before or after it was signed ? A. After, I went up there before we made the contract to look at it. Q. You say it was after this contract that he agreed with you that he would go up and do the work? A. Yes, sir; he was going up there to look after the work." And again (by Mr. Comegys) : " Q. At this last talk of yours with Mr. Bunnell, before he went to New Hampshire, how much was he authorized to expend for expenses ? A. He wasn't authorized to spend any special amount, but it wouldn't exceed $500, something between $400 and $500. Q. Who said that? A. Mr. Bunnell." The defendant when called as for cross-examination by the plaintiff testified as follows : " Q. Dρ you mean to say that you did not tell him that the expense to which he would be put would not exceed $500? A. How could I tell him ? Q. Just answer the question. A. No, sir. Q. You swear to that? A. I never told anybody that." The defendant further testified that he had received from the plaintiff, on account of the expense of taking out this ore, the sum of $225. It is undisputed that the defendant expended more than $500 in taking out the ore.

It thus appears that there was a supplemental agreement between these parties, under the terms of which the appellant was to go to New Hampshire and take out the ore. The appellant says that the terms upon which he undertook to do that were that he was to receive pay for his time and all the expenses ; the appellee testifies that the amount which he was to be called upon to pay was not to exceed $500, and this raised the only issue of fact which was presented to the jury in this case. If the agreement was that Mr. Winans was to receive $3.00 per day and all the expenses of taking out the twenty tons of ore, then he was entitled to credit in the amount of his compensation and expenditures, as against the $1,000 paid by Winans under the option, and the $225 advanced to Bunnell upon the operations in taking out the ore. On the other hand, if the ap-

pellant agreed with the appellee at the time the parol contract was made that he would take out the ore and that the expenses should be limited to $500, then the $500 is to be deducted from the amount of the credits to which the appellee was entitled. This question of fact was fairly submitted to the jury in an impartial charge by the learned court below. There had been no attempt to vary the terms of a written instrument by proof of an antecedent or contemporaneous parol agreement. The parol testimony conclusively established a parol agreement subsequently made, for the purpose of carrying into effect the original contract, of which it was explanatory: Yeager v. Cassidy, 12 Pa. Superior Ct. 232; Caley v. Railroad Company, 80 Pa. 363; McCauley v. Keller, 130 Pa. 53. There was ample testimony to warrant the submission of the questions of fact involved in this issue to the jury, and the second, third and fifth specifications of error are dismissed.

The first specification of error complains of the sustaining of an objection to a question asked the plaintiff when he was on the stand. " Q. Now it is for that, that you bring this suit, is it, because he did not pay you back? By Mr. Comegys: We object to that, the record is the best evidence. By the Court: I sustain the objection. Exception noted for the defendant, at whose request a bill is sealed." We do not think the reason assigned for the objection is sound, but, as the plaintiff in his examination in chief, in his cross-examination, and subsequently when recalled by the defendant as for cross-examination, had fully stated the nature of his claim and the grounds upon which it was based, the error was harmless and the specification is dismissed.

The fourth specification of error is to the following language in the charge of the court: " We will allow the contract to go out with you, so that you can examine it for yourselves, although the construction of a paper of this kind is generally for the court; at the same time, in this case you will be entitled to read it for yourselves, so as to find out what were the conditions under which this contract was executed." As a general rule papers which have been offered in evidence may properly be sent out: Hendel v. Turnpike Road, 16 S. & R. 91; Riddlesburg Iron & Coal Company v. Rogers, 65 Pa. 416; Hall v. Rupley, 10 Pa. 231. Where no objections are made at the time the paper is sent out, the matter being, as a general rule,

within the sound discretion of the court, the judgment will not be reversed upon error: Navigation Company v. Richards, 57 Pa. 142; Shomo v. Zeigler, 10 Phila. 611. In the present case, however, the objection is not simply that the paper was sent out, but that it was sent out with such instructions as to warrant the jury in believing that one of their functions was to construe this instrument. The instruction does practically say to the jury that the construction of such a paper is generally for the court, but in this case it will be referred to them to find out what it means. If the construction of this paper had been in any way involved in the issue of fact which the jury were really to determine, this judgment ought not to be affirmed. But, as all the covenants of the contract had been fulfilled and it could not possibly have misled the jury in arriving at a conclusion as to the questions of fact upon which they were to pass, we are of opinion that the error did no harm.

The language of the charge complained of in the sixth specification of error, wrested from its context, might seem to be inaccurate; but when considered in connection with the language which accompanied it, it was not improper to be used. The court was simply explaining to the jury what they had a right to consider in passing upon the disputed question of fact arising under the supplemental parol contract, and having stated what the appellant had testified to, what the appellee had testified to and marked the variances of their testimony, it was proper that the jury should consider the circumstances which had led up to the making of this parol contract, and what the circumstances of the parties were, at and before the time when it was made. When two parties disagree as to the terms of a parol contract and their testimony is wholly irreconcilable, the jury must determine which of them is to be believed. And, in arriving at a conclusion upon that subject, it is proper for them to consider the circumstances under which they dealt and everything which may legitimately be considered in determining the probabilities and improbabilities of their respective stories. Thus viewed, the instruction was correct.

The seventh assignment of error is without merit. The one question of fact upon which this jury was to pass was presented to them in terms which could not have been misunderstood, and by which they could not have been misled.

Judgment affirmed.