# Beso v. Eastern Building and Loan Association of Syracuse, New York.

*Building and loan associations—Foreign building and loan associations Lex loci contractus—Mortgage—Usury.*

Where a loan made by a foreign building and loan association is evidenced by negotiable promissory notes payable at the office of the association in the state of New York, the notes constitute a contract to pay money in New York, and is subject to the law of New York which permits building and loan associations to charge usurious interest. The validity of the promise to pay, and the legality of the rate of interest, fines and fees charged, are to be determined in accordance with the law of New York; but a mortgage of Pennsylvania real estate to secure the notes, is a conveyance of real estate in Pennsylvania as security for the debt, and the legality of the execution thereof, the extent and character of the lien thereby created, and the construction of the instrument must be governed by the law of Pennsylvania.

*Mortgage—Married women—Joinder of husband—Acknowledgment.*

A married woman can, in Pennsylvania, only create a lien by a mortgage upon her real estate when her husband joins in the instrument, which must be acknowledged in the form required by the Pennsylvania act.

*Mortgage—Covenants—Charge on land—Necessary implication.*

Any charge which is imposed upon real estate of a married woman by a mortgage executed by her must be found in the express covenants of the mortgage, or arise out of the same by necessary implication.

*Mortgage—Foreign building and loan association—Covenants — Reference to by-laws.*

On a bill in equity to cancel notes given for a loan to a foreign building and loan association, and for a surrender of a mortgage on Pennsylvania real estate given to secure the notes, it appeared that plaintiff, a married woman, had paid a large number of the notes, and having a right to anticipate payment of the remainder, had tendered their aggregate amount with interest, and that the tender had been refused. The association which was a New York corporation, claimed that the mortgage covered

not only plaintiff's obligation on the notes as a borrower, but also her duties and liabilities as a shareholder. The mortgage contained the following clause: " This grant is intended as a security for the payment of the sum . . . . the same being the principal, interest and premiums of a loan from said association, which said loan was made pursuant to and accepted under the provisions of the by-laws of said association, and which said by-laws have been read by the mortgagee, and are hereby made part of this contract; which said loan is evidenced and secured to be paid by seventy-three promissory notes of even date herewith." The by-laws contained numerous clauses relating to the duties and liabilities of borrowers, and also numerous clauses relating to the liabilities and duties of shareholders as such. The various covenants of the mortgage, by reasonable construction applied only to plaintiff's duties and liabilities as a borrower, and not to her duties and liabilities as a shareholder. *Held,* that the plaintiff was entitled to the relief for which she prayed.

*Corporations—Agents—Mortgage.*

A corporation which has accepted a mortgage as security for a loan must rely upon the covenants of the mortgage as formally executed, and cannot be heard to allege that its officers exceed their authority in executing the mortgage. In this respect a corporation differs nothing from a natural person; if it would enforce the contracts of its agents it must first agree to adopt and be bound by them.

Argued April 30, 1900. Appeal, No. 64, April T., 1900, by defendant, from decree of C. P. No. 2, Allegheny Co., April T., 1898, No. 533, on bill in equity in case of Josephine Beso and Anthony Beso v. The Eastern Building & Loan Association of Syracuse, New York. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Bill in equity to restrain a suit on a mortgage and for cancelation of notes secured by the mortgage. Before WHITE, P. J.

From the record it appeared that plaintiff, Josephine Beso, was a member of the Eastern Building & Loan Association of Syracuse, New York. On August 8, 1891, plaintiff made an application for a loan for $2,500. This application was duly accepted, and plaintiff gave seventy-three promissory notes payable at the office of the association at Syracuse, secured by a mortgage of her land in Wilkinsburg, Pa. By the terms of the mortgage she had a right to anticipate the payment of the notes. After paying sixty-two of the notes, on August 30, 1897, she tendered to the association $450, which was more than enough to pay the six notes then due, with interest, and the other five not due, and demanded a surrender of the notes. The associa-

tion refused to accept the money and surrender the notes, claiming that the mortgage covered not only plaintiff's liability as a borrower, but also her liability as a shareholder. The covenants of the mortgage and the provisions of the by-laws of the association are stated in the opinion of the Superior Court.

The court below entered a decree in accordance with the prayers of the bill.

*Error assigned* among others was the decree of the court.

*Chester M. Elliott*, with him *R. E. Stewart*, for appellant.—The contract must be construed and controlled according to the laws of the state of New York : National B. & L. Assn. v. Ashworth, 91 Va. 706 ; 22 S. E. Repr. 521 ; Nickels v. People's B., L. & S. Assn., 93 Va. 380 ; Bennett v. Eastern B. & L. Assn., 177 Pa. 233 ; 35 Atl. Repr. 684 ; B. & L. Assn. of Dakota v. Logan, 66 Fed. Repr. 827 ; Equitable B. & L. Assn. v. Vance, 49 S. C. 402 ; 27 S. E. Repr. 274 ; Tobin v. McNab, 53 S. C. 73, 30 S. E. Repr. 827 ; People's B., L. & S. Assn. v. Tinsley, 96 Va. 322 ; Ware v. Banker's Loan & Investment Co., 95 Va. 680 ; Liverpool & Great Western Steam Co. v. Phenix Ins. Co., 129 U. S. 397 ; New England Mortgage Security Co. v. McLaughlin, 87 Ga. 1 ; 13 S. E. Repr. 81 ; Lanier v. Union Mortgage, Banking & Trust Co., 64 Ark. 39 ; 40 S. W. Repr. 466 ; Dugan v. Lewis, 79 Tex. 246 ; 14 S. W. Repr. 1024 ; Cæsar v. Cappell, 83 Fed. Repr. 403 ; Scudder v. Union National Bank, 91 U. S. 406 ; Bigelow v. Burnham, 83 Iowa, 120 ; 49 N. W. Repr. 104 ; Smith v. Parsons, 57 N. W. Repr. 311 ; Andrews v. Pond, 13 Pet. 77 ; Watson v. Lane, 52 N. J. Law, 550 ; 20 Atl. Repr. 894 ; Central Trust Co. v. Burton, 74 Wis. 329 ; 43 N. W. Repr. 141 ; Equitable Building & Loan Association v. Hoffman, 50 S. C. 303 ; 27 S. E. Repr. 692.

The application for shares, the certificate of shares, application for advance, application for loan, the notes, bond, mortgage, articles of incorporation and the by-laws of the appellant, constituted the contract between the plaintiff and the appellant, and the plaintiff's rights and liabilities are measured by the terms of such contract : O'Malley v. People's Building, Loan & Savings Assn., 92 Hun, 572 ; Daley v. People's Building, Loan & Savings Assn., 172 Mass. 533 ; Heslin v. Eastern B.

& L. Assn. of Syracuse, 28 Misc. Rep. (N. Y.) 376; Martin v. Zellerbach, 38 Cal. 300; Lockhart v. Van Alstyne, 31 Mich. 76.

The plaintiff and the defendant never sustained toward each other the ordinary relation of debtor and creditor: Eversmann v. Schmitt, 53 Ohio, 174; 41 N. E. Repr. 139; Leahy v. National B. & L. Assn., 100 Wis. 555; 76 N. W. Repr. 625; Endlich on Building Associations, secs. 77, 79, 122, 124.

*R. A. Balph*, with him *James Balph*, for appellees.—The covenant is not to keep and perform all requirements of the by-laws, but to keep all promises and engagements made and entered into with said association, according to the true intent and meaning of the by-laws. These "promises" and "engagements" all have reference to matters looking to the security of the loan and its repayment.

OPINION BY W. D. PORTER, J., February 14, 1901:

Josephine Beso, one of the plaintiffs, was a married woman residing with her husband in the state of Pennsylvania. She became a member of a New York building and loan association and subsequently applied for and received a loan from the association. The application for membership and the application for loan recited the name of the association and the city in New York where it did business. The loan was evidenced and secured to be paid by seventy-three negotiable promissory notes, executed by Josephine Beso and her husband, and payable to the said association at its office in Syracuse, in the State of New York. Each note was for the sum of $39.60, except the three last maturing, which were each for $20.85, aggregating the sum of $2,834.55. The payment of these notes was secured by a mortgage executed by the plaintiffs, upon certain property in the county of Allegheny and state of Pennsylvania. This was a contract to pay money in New York; the primary contract creating the indebtedness was subject to the law of New York which permitted building and loan associations to charge usurious interest. The validity of the promise to pay and the legality of the rate of interest, fines and fees charged are to be determined in accordance with the law of the state of New York: Bennett v. Eastern Building & Loan Association of

Syracuse, N. Y., 177 Pa. 233. The mortgage was a conveyance of real estate in Pennsylvania, as security for the debt, and the legality of the execution thereof, the extent and character of the lien thereby created and the construction of the instrument must be governed by the law of Pennsylvania. A married woman can, in Pennsylvania, only create a lien by a mortgage upon her real estate when her husband joins in the instrument, which must be acknowledged in the form required by our act of assembly: Bingler v. Bowman, 194 Pa. 210. Any charge which was imposed upon the real estate of this plaintiff by the mortgage out of which this litigation arose must be found in the express covenants of the mortgage, or arise out of the same by necessary implication.

This is not a suit by a stockholder to recover the value of his stock, nor a suit by an association to collect an assessment or dues from a shareholder. With the duties of Josephine Beso to the association, as a shareholder therein, we have nothing to do, unless under the covenants of the mortgage the land was pledged as a security for the performance of those duties. The plaintiffs here assert that the covenants of the mortgage have been performed, and, upon the ground that the defeasance has been accomplished, pray that the conveyance be canceled and satisfied. The plaintiffs paid, as they fell due, sixty-two out of the seventy-three notes recited in the mortgage, and the same were surrendered to them by the defendant association. The association then sent to the plaintiffs an agent, for the purpose of inducing them to enter into some new arrangement on the subject; the plaintiffs declined to enter into any new arrangement and they were then notified by the association that it would not receive the money on the eleven remaining notes and surrender them and satisfy the mortgage. The plaintiffs subsequently duly tendered to the association the sum of $450, alleging the same to be in full of the eleven notes remaining unpaid, and demanded a surrender of the notes. The learned judge of the court below found as a fact that this sum was more than sufficient to pay said eleven notes, with the interest thereon, and to this finding of fact error is not assigned. Under the by-laws of the association, the plaintiffs had the right to anticipate the payment of these notes, and, as the notes were negotiable, they had the unquestionable right to demand their

surrender. The association declined to accept this money and surrender the notes. After the last note had become due the plaintiffs filed this bill, continuing their tender of $450, and praying that upon the payment of the same the mortgage be decreed to be marked satisfied. After a final hearing the court below decreed the satisfaction of the mortgage, upon payment of the amount tendered. It is conceded by the appellant that if the payments for which the mortgage is a security are to be limited to the discharge of the debt evidenced by the notes, then the sum decreed by the court below to be paid as a condition precedent to the satisfaction of the mortgage is sufficient to discharge the indebtedness represented by the notes. The contention of the appellant is, however, that the notes recited in the mortgage did not represent the whole obligation of the plaintiff for which the mortgage is a security, and that the association is entitled to hold the mortgage as a security for the payment of dues, interest and premiums by Josephine Beso, until the stock held by her in the association shall have attained the value of $100 per share.

There is nothing which appears upon the face of the mortgage which can, by any reasonable construction, be held to covenant that the land was conveyed as a security for anything further than a specific sum of money, payable at certain definite periods, with interest and such fines as might be imposed, in accordance with the by-laws of the association, in case of delay in payment, together with the usual covenants as to the payment of taxes and insurance, unless such covenant arises out of the references to the by-laws of the association which occur in the instrument. The references to the by-laws are in the following language, viz: " This grant is intended as a security for the payment of the sum of $2,834.55, the same being the principal, interest and premiums of a loan from said association, which said loan was made pursuant to and accepted under the provisions of the by-laws of said association, and which said by-laws have been read by the mortgagee, Josephine Beso, and are hereby made part of this contract; which said loan is evidenced and secured to be paid by seventy-three promissory notes of even date herewith." Then follows a recital of the amounts of the various notes, and the times at which they become due, and a recital that the debt is also secured by bond

in the penal sum of $5,000. " And the said mortgagees hereby covenant and agree with the parties of the second part, its successors and assigns, to pay said principal, interest and premiums at maturity, and the interest accruing on said notes after maturity, and all fines and penalties that may be imposed pursuant to the provisions and constitution and by-laws of this association, and to keep and perform all promises and engagements made and entered into with said association, according to the true intent and meaning of its by-laws and articles of association." " And it is hereby expressly agreed that if default be made in the payment of any one of said notes, or the nonpayment of taxes, or neglect to keep the premises insured, or not keep them in good repair, or in case of a breach of any of the covenants or agreements herein contained, or in case of failure to fully observe and keep the by-laws of said association, the whole of the said principal sum, interest, fines, premiums, dues and costs shall at once become due and payable, at the option of said association." It is contended that these provisions bind the plaintiff, Josephine Beso, to keep and perform all her promises and engagements as a shareholder in the association, and that the mortgage is a security for her engagements as a shareholder. The learned judge of the court below well said : " This is a forced and unnatural construction of the language. The cardinal rule for construing the words of any contract is to make them apply to the subject-matter of the contract. The subject of this contract is the loan of money, its security and payment. . Every clause and word in the mortgage properly refers to that. The by-laws contain many provisions in reference to a borrowing member, his duties and liabilities. He must pay the monthly instalments promptly, or be subject to a fine. He must keep the property insured, pay all taxes, keep it free from incumbrances and in good condition. These and other duties are prescribed in the by-laws, and also embraced in the covenants of the mortgage. There is not a clause or word in the mortgage that can fairly be extended to embrace the plaintiff's duty or liability as a shareholder beyond the liability of the loan."

The clause of defeasance in the mortgage is in these words : " And this conveyance shall be void if full payment of the aforesaid moneys, principal and interest be made as hereinbefore speci-

fied, and if the aforesaid covenants and each of them be well and truly kept and performed, as herein specified and provided." When the last note became due and was paid, that was " full payment of the aforesaid moneys, principal and interest," if up to that time the mortgagees had observed all the requirements of the by-laws, or had discharged all penalties incurred by reason of any violation thereof; they were then in position to say: " All the conditions upon the performance of which your claim upon this land was to be defeated have been complied with, and we demand a satisfaction of the mortgage." To sustain the contention of the defendant we must write into this clause of defeasance a condition which the parties did not embody in their contract. Even if the articles of incorporation and all the by-laws of this association are to be read into the mortgage, the position of the appellant cannot be sustained. We have carefully studied the voluminous articles of incorporation and the numerous by-laws of this association, and we find in them nothing which would lead a borrower to suspect or justify the association in asserting that the mortgages given by those who borrowed money from the association could be held as a security for the payment of dues upon stock until the stock of the association had acquired an actual value of $100 per share.

The by-laws provide, article 14, section 1: " The terms and conditions expressed in the certificate of stock, in connection with the application for membership and the by-laws of this association, form the contract between the association and each shareholder therein." The certificate of stock which the association issued to Josephine Beso was dated May 1, 1891, and it began with the words, " Series No. B-5, maturing Nov. 1st, 1897." It certified that Josephine Beso was the holder of twenty-five shares of the stock of said association, and " in consideration of the membership fee and agreements and stipulations contained in the application for membership in the association, and full compliance with the terms, conditions and by-laws printed on the front and back of this certificate, which are hereby made a part of this contract, the said Eastern Building & Loan Association of Syracuse, New York, agree to pay said shareholder, her heirs, etc., the sum of $100 for each of said shares, at the end of seventy-eight months from the date

hereof." Upon the front and back of the certificate were printed fifteen conditions and many by-laws, of which it is only necessary to notice the following conditions: " First. The shareholder agrees to pay, or cause to be paid, a monthly instalment of seventy-five cents on each share named in this contract, the same to be paid on or before the last Saturday of each month, until such share matures or is withdrawn." " Ninth. The by-laws of this association, which are attached to and indorsed hereon, are a part of this contract, and such by-laws and this certificate are to be construed together as a part of the contract between the association and the shareholder." " By-law, article 14, section 14: All shareholders shall pay, or cause to be paid, a monthly instalment of seventy-five cents on each share named in the certificate, until the same shall be fully paid; said instalment to be paid to the association on or before the last Saturday of each month." The certificate and the conditions and by-law referred to construed together constitute a contract that the certificate shall mature at the end of seventy-eight months; that during that period the stockholder shall pay a monthly instalment of seventy-five cents on each share of stock, and that, if the stockholder makes said payments, the stock shall become full paid and the association will, at the end of the period, pay the stockholder $100 for each share of stock. This was the primary contract between the parties. There are many provisions with regard to withdrawals, transfers and fines in case of default in payment, which it is not necessary in this case to consider. Under the terms of this contract the shareholder was bound to pay the seventy-five cents per share during the whole period of seventy-eight months, although the stock might, if the association had been unusually successful, have become worth $100 a share before the expiration of that period. This is made clearly manifest by the by-laws, article 14, section 21: "And it is hereby expressly agreed between all shareholders and this association that a payment of $100 per share named in their certificate, that have been in force till maturity, shall be accepted as full payment of all claims upon their certificate and against this association." There can be no question that the association intended to assert this right in this case, for when it made the loan it required from the plaintiff and accepted an absolute

withdrawal of her stock, and not a mere assignment of it, as a security collateral to the mortgage. We are not in this case to determine whether the association had any authority under the law of the state of New York to enter into such a contract; the question here presented is, what contract did the parties spread upon the records of the county of Allegheny, in the state of Pennsylvania?

The conditions and the by-laws, printed upon the certificate, provided that there should be taken out of all loans a gross premium of ten per cent, and that the borrower should pay five per cent interest, and five per cent premium per annum, on the loan, and that in case of default in payment he should pay a fine of twenty cents per month on each $100 borrowed. In article 14, section 3 of the by-laws, it was provided that "all loans made by this association shall be upon satisfactory note and first mortgage security on real estate, together with fire insurance policy in some approved company, if upon improved property, and for every $100 of loan made to a shareholder, he shall, in addition thereto, transfer and pledge to the association one share of the stock held by said shareholder as a collateral security on all loans by the association to the shareholder. . . . All interest and stock payments shall be paid on the last Saturday of each month during the continuance of said loan." It will be observed that the payments here provided for are to be made during the continuance of the loan; not until the stock shall have become worth $100 per share. Subject to the provisions of the by-laws hereinbefore recited, the purpose of the articles of incorporation and the by-laws seems to have been to impress upon the minds of shareholders the conviction that directors of the association had full power to make any contract, with shareholders and borrowers, that they might deem expedient. In the articles of incorporation we find this provision: "Article 6. The management of all the business of the association shall be vested in a board of nine directors, who shall be chosen at each regular meeting; said board shall have full power and authority to fill all vacancies and make such by-laws, rules and regulations for the general management and conduct of the business of this association as they may deem necessary." And again, article 18: "The stock of this association may be issued in series if the board of directors may so

decide. The directors of this association may enter into such contracts and agreements and appoint such agents for its business management as they may deem for the best interest of its affairs." The by-laws provide, in article 15, which relates to loans, that each shareholder shall be entitled to a loan of $100 from the association, for each share of stock held by him, upon compliance with certain conditions, but in the second section of the same article we find this provision: " Nothing herein contained shall prevent the board of directors from loaning funds of the association to any member in greater sums than the above provided, upon approved securities." The articles of incorporation, article 10, provide that: " The advances or loans made to any member of this association shall not exceed the face value of the stock owned by him, and, except as hereinafter stated, shall be upon satisfactory first mortgage, real estate security, and be under such rules and regulations as the by-laws and the board of directors may require. Immediately following this is a provision that loans may be made on shares of stock standing in force one year to an amount not exceeding ninety per cent of the monthly dues paid to the association upon such stock as collateral security, and upon such note, bond, or other obligation or instrument as the board of directors and by-laws may require. These are the only provisions in the by-laws authorizing a loan upon stock.

This association, acting through its board of directors, entered into an agreement with Josephine Beso that her shares of stock should mature and become fully paid at the end of seventy-eight months, upon conditions with which she has complied. The application for a loan which she made to them, and which they approved and accepted, was based on this agreement, and expressly provided that the loan should mature at the end of six and one half years. The amount to be paid by Josephine Beso, for which the notes secured by the mortgage were given, was based upon this primary agreement between the parties, and the amount of the mortgage was determined in accordance therewith. There is nothing in the by-laws or articles of incorporation which forbade the board of directors of the association to enter into such a contract. There is nothing in the articles of incorporation or the by-laws which can be held to enlarge the express covenants of the mortgage so as to

make it a security for the payment of any amount beyond the debt represented by the notes, with the interest and fines thereon.  The learned counsel representing the defendant practically concedes that this was the meaning of the contract upon its face, but in his printed argument he suggests that " the seventy-eight months provided in the certificate of shares and the amounts named in the seventy-three notes, and the amount specified in the mortgage, each and all are simply an estimate of the amount and time required to mature the shares of stock of the plaintiff."   The position of the defendant is clearly set forth in the second request for finding presented to the learned court below, viz : " Second : The contention on the part of the defendant company is that the officers of said association had no right to fix seventy-eight months for the maturity of the stock, and that the members are liable to dues and assessments for an indefinite period.   That the plaintiff was thus liable as a member and the association could hold the mortgage as security for her liability as a member."   This was a practical concession that the written instrument recorded in the state of Pennsylvania created a charge upon the land of the plaintiffs only to the extent set forth in the bill.   It is sought to escape the consequences of this condition of the record upon the ground that the officers of the association had no right to enter into the contract.   In other words, it is asserted that the recorded mortgage does not set forth what ought to have been the contract if the officers of the association had acted in accordance with the laws of the state of New York.   It is true that the by-laws of this association may not be in accord with the laws of the state of New York, and that the officers of the association may have departed from the authority conferred upon them under the laws of that state when they entered into this contract, but any claims which the appellant has upon the land of the plaintiffs is limited by the recorded covenants.   We are not dealing with the personal liability of Josephine Beso, as a shareholder, to the association.   Nothing appears in the case which would warrant a reformation of the mortgage ; there was no mistake in drafting the instrument, which contains the precise covenants that the parties intended, and there is no evidence which would warrant the finding that the plaintiffs were a party to any fraud.   But, it is said, this association was

not bound by the contracts of its duly constituted officers, they having exceeded their authority, and hence it is under no legal obligation to fulfil their undertakings. Grant this to be so; but how, then, can the land of the plaintiffs be held as security for the performance of an obligation for which it was never pledged? For the purposes of this case the appellant must rely upon the covenants of the mortgage as formally executed.

In this respect a corporation differs nothing from a natural person; if it would enforce the contracts of its agents it must first agree to adopt and be bound by them: Pittsburg & Connellsville Railroad Company v. Stewart, 41 Pa. 54; Caley v. Phila. & Chester Railroad Company, 80 Pa. 363.

The decree of the court below is affirmed, and the appeal dismissed at costs of appellant.