## Caley *versus* Philadelphia and Chester County Railroad Co.

1. A subscription to the stock of a public corporation prior to the procurement of its charter is absolute and a condition attached is void.

2. Commissioners to receive subscriptions are not the agents of the corporation but of the public, under limited and definite powers which every subscriber is bound to know.

3. After a corporation is organized it may receive subscriptions for stock on conditions which it is bound to perform.

4. After organization, one subscribing without condition cannot set up an unlawful act of the directors to avoid his subscription.

5. Whenever a power which the subscriber cannot control, intervenes to alter a material point in his contract without his assent, it works his release.

6. A subscription paper set out the termini of a railroad and the route over which it would be constructed. *Held,* that this was an agreement that the termini and the route should be as stated; and if the company materially changed them, a subscriber would be released.

7. A railroad company took subscriptions for the road with specified route and termini; they passed a resolution changing them in material points. *Held,* that this was evidence of abandonment of the route, &c., in the subscription.

[Caley *v.* Phila. & Chester County Railroad Co.]

8. In a subscription to railroad stock it was stated that the road was to be commenced " as soon as sufficient funds shall be subscribed to carry on the work." In a suit for a subscription; *Held*, that the assurances of the officers at a public meeting held for procuring subscriptions, at which the defendant subscribed, that the money would not be called for till $150,000 were subscribed, were evidence; that being an inducement on which the subscription was obtained.

9. Ambiguities in a writing may be explained, varied, added to or contradicted by parol, where it is shown that but for the oral stipulations the writing would not have been executed.

10. A party seeking to enforce a contract made by his agent is bound by his declarations made at the time, although he has exceeded his authority.

11. Indiana, &c., Turnpike Co. *v.* Phillips, 2 Penna. R. 184; Manheim, &c., Plankroad Co. *v.* Arndt, 7 Casey 317, followed.

January. 17th 1876.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Delaware county:* Of July Term 1875, No. 7.

This was an action of assumpsit brought June 4th 1873, by The Philadelphia and Chester County Railroad Company against David P. Caley. The action was to recover an instalment of $5 per share on ten shares of the stock of the plaintiffs.

By the Act of March 17th 1871 (Pamph. L. of 1872, p. 1269), commissioners were appointed to open books and receive subscriptions for the plaintiffs' company, by the name of The Philadelphia, Delaware and Chester Central Railroad Company, subject to the provisions of the General Railroad Law of February 19th 1849 ; the capital stock to be $500,000 and to be divided into shares of $50 each, with authority from time to time to increase the capital so much as the company might think necessary to complete the road. The road was to commence " at or near Philadelphia" and terminate at some point on the Pennsylvania Railroad, east of Downingtown in Chester county. Letters patent were issued to the company on the 13th of October 1871.

Afterwards the company opened a subscription for stock under which, amongst others, the defendant subscribed for ten shares.

The subscription was as follows :—

" We, the undersigned, subscribers for the number of shares in the capital stock of the Philadelphia, Delaware and Chester Central Railroad Company, set opposite our names respectively, and agree to pay for the same as the directors of said company may call for instalments, in accordance with the provisions of the law regulating the collection of instalments on subscriptions to the capital stock of railroads. The route of the proposed railroad to be as folllows : commencing at a point on the Pennsylvania Railroad at or near Hestonville, thence by the most practicable roate to the valley of Cobb's creek, * * * then along Fawkes' and Caley's runs to Newtown Square ; thence, *via* Sugartown and Goshenville by the most expedient route to be surveyed to West Chester, and

[Caley *v.* Phila. & Chester County Railroad Co.]

from thence to Downingtown, as soon as sufficient funds shall be subscribed to carry on the work."

Afterwards by Act of April 9th 1872 (Pamph. L. of 1873, p. 1084), the name of the company was changed to "The Philadelphia and Chester County Railroad Company."

The case was tried February 25th 1875, before Clayton, P. J.

The plaintiffs gave in evidence the Acts of Assembly, grant of letters patent and the subscription. They also proved the call for instalments, &c.

Tryon Lewis, the president of the company, testified : that the road had been commenced on September 11th 1872, about three-quarters of a mile east of Newtown Square.

On cross-examination he said ; that they could not say that the route had been permanently fixed east of Darby creek ; the route would be subject to improvement; the following resolution was the last act of the board of directors in reference to the location of the road : " That the eastern terminus of the line be fixed on the West Chester and Philadelphia Railroad at or near Christian street," &c. ; the terminus in the resolution was four or five miles from the terminus at Hestonville, provided for in the subscription, but in the landing in the city, the final terminus would be about one square distant; one being on Market street and the other on Chestnut street. The amount of subscriptions was $84,500; no work had been done on the line outside of that prescribed in the subscription-book; he could not say that any terminus had been settled at all. Caley's subscription was after granting the letters patent.

The defendant offered to prove as follows :—

1. That at the time he made his subscription the route of the road was staked out through his lands, and that as an inducement for him to subscribe, the president or other officers of the company assured him, if he would subscribe, that the road should be built upon that route through his lands.

2. That he asked the directors of the company, or some of them, what guaranty he would have that the road would be built, to which they replied, that the road would not be undertaken nor his subscription called for, till $150,000 or $160,000 at least, of bonâ fide subscriptions to stock had been taken, and that this amount was fixed by them, as being in their judgment sufficient to carry on the work.

3. That the defendant subscribed upon the express condition and understanding with the officers of the company that the eastern terminus of the road should be made at or near Hestonville ; that the termination of the road at this point was the main consideration for the defendant's subscription, and that he would not have subscribed to a road upon any other route.

And further, that these representations were made at a public

[Caley *v.* Phila. & Chester County Railroad Co.]

meeting called by the company, at which were present the president, who occupied the chair, the treasurer and one or more directors.

The offer was objected to by the plaintiff, overruled by the court and a bill of exceptions sealed.

The following are points of defendants :—

1. The location of the road from a point at or near Hestonville on the Pennsylvania Railroad to West Chester and Downingtown is a condition precedent in the contract of subscription and the subscription cannot be enforced till this condition has been complied with.   If the plaintiffs have not permanently located its proposed road essentially upon the route described, and between the termini named, with a view of constructing it there, they cannot recover in this suit.

2. If the plaintiffs have located their proposed road with its eastern terminus at or near Christian street, on the West Chester and Philadelphia Railroad, and have resolved to construct it upon this route, the defendant's subscription cannot be enforced.

3. That sufficient funds should be subscribed to carry on the work, is also a condition precedent in the contract of subscription, and unless enough subscriptions have been taken to carry on the work, the subscription of the defendant cannot be enforced.

4. If the president, directors or other authorized agents of the company agreed with the defendant and other subscribers, that the work should not be undertaken, or their subscriptions called for, till $150,000 in bonâ fide subscriptions had been secured, and this amount has not been subscribed for, the plaintiff cannot recover.

The court negatived without qualification, the first and third points.

He affirmed the second point " with the qualification that the jury must find that the location is a permanent one and that the road is to be built upon that location, but I do not affirm it as an open question."

He negatived the fourth point, " as it contradicts the written agreement."

The verdict was for the plaintiffs for $63.

The defendant took a writ of error ; he assigned for error :—

4. The rejection of defendant's offer of evidence.

5–8. The answers to defendant's first, second, third and fourth points.

*C. E. Morris* and *H. C. Howard* (with whom was *E. S. Dixon*), for plaintiff in error.—The evidence offered would not contradict the written subscription, although it might vary its operation ; it was therefore admissible : Chalfant *v.* Williams, 11 Casey 212. It showed a promise which was the inducement to execute the paper : Shugart *v.* Moore, 28 P. F. Smith 469 ; Powelton Coal

[Caley v. Phila. & Chester County Railroad Co.]

Co. v. McShane, 25 Id. 238. The offer was evidence also to show what was intended by "sufficient funds:" Woods v. Wallace, 10 Harris 176 ; Baltimore & Philadelphia Steamboat Co. v. Brown, 4 P. F. Smith 77 ; Gould v. Lee, 5 Id. 99 ; Miller v. Henderson, 10 S. & R. 290. It was evidence to show that the consideration was that the eastern terminus should be near Hestonville ; the consideration can always be inquired into : Geiger v. Cook, 3 W. & S. 266 ; Clement v. Reppard, 3 Harris 111 ; McCullough v. McKee, 4 Id. 289 ; Plankroad Co. v. Arndt, 7 Casey 317. The promises by officers at a public meeting are evidence : Pittsburg & Conn. Railroad Co. v. Stewart, 5 Wright 54 ; Nippenose Manufacturing Co. v. Stadon, 18 P. F. Smith 256 ; Henderson v. Railroad Co, 17 Texas 560. The location according to the route stated in the subscription is a condition precedent : Plankroad Co. v. Arndt, *supra ;* Rhey v. Ebensburg & Susquehanna Railroad Co., 3 Casey 261 ; 1 Redf. on Railways 184, 210 and notes. The resolution to construct the road five miles from Hestonville relieved the defendant : Mercer Co. v. Coovert, 6 W. & S. 70 ; Middlesex Corp. v. Locke, 8 Mass. 268 ; Hartford & N. H. Railroad Co. v. Crosswell, 5 Hill 383.

*W. Ward* (with whom was *G. L. Crawford*), for defendants in error.—The offer rejected was to prove a parol agreement varying a written contract : Hacker v. Nat. Oil Refining Co., 23 P. F. Smith 93 ; Anspach v. Bast, 2 Id. 356 ; Craig v. Normal School, 22 Id. 346. Whether there were sufficient funds to carry the work through was for the officers of the company : Angell & Ames on Corp., sect. 146, 531, 532, note *a ;* Brices's Ultra Vires 152, and note : Custar v. Titusville Gas & W. Co., 13 P. F. Smith 381. The location was not a condition precedent : Miller v. Pittsburg & Conn. Railroad Co., 4 Wright 237.

Mr. Justice GORDON delivered the opinion of the court, January 31st 1876.

Where one subscribes to the stock of a public corporation prior to the procurement of its charter, such subscription is to be regarded as absolute and unqualified, and any condition attached thereto is void : Bedford Railroad Co. v. Bowser, 12 Wright 29. The reason for this rule is obvious ; the commissioners, who are appointed to receive such subscriptions, are not the accredited agents of the corporation, for it is not yet in being, but are rather the agents of the public, acting under limited and definite powers, which every one is bound to know, and if he be misled by representations which such agents have no right to make, it is his own folly. Any other rule would lead to the procurement from the Commonwealth of valuable charters without any absolute capital for their support, and thus give rise to a system of speculation and

fraud which would be intolerable. When, however, the company is once organized, a different order prevails. Such a company may receive conditional subscriptions for its stock, and, when it does so do, it is bound to the performance of the conditions therein contained : Railroad Co. *v.* Stewart, 5 Wright 54 ; Railroad Co. *v.* Hickman, 4 Casey 318. Doubtless the act of incorporation might alter this rule, and put all stock subscriptions within the same category, and subject them to the same conditions as those made before organization. But the Act of 1849, subject to the provisions of which the plaintiff company was erected, has in it nothing to indicate that the legislature intended to restrict the powers which corporations ordinarily possess over their own stock. It follows, that the plaintiff might dispose of its stock, as of any other of its property, in such manner as, in its judgment, might best subserve the purposes of its erection, and, to this end, might receive conditional subscriptions for such stock.

Again, after the organization of a company, chartered for some public purpose, as, in this case, for the building of a railroad, if one subscribe, without condition to the stock of such company, he does so in view of the general powers conferred upon it by the legislature, and he is responsible with his fellow corporators for the proper and lawful exercise of those powers, and he cannot, therefore, set up an unlawful act of the directors as an excuse for the non-payment of his subscription ; for it is within his own power to prevent such abuse of authority.

As was said in Graff *v.* The Railroad Co., 7 Casey 489, the contract of subscription is not only with the company, but, also, with all the other shareholders ; hence the subscriber may not set up even the fraud of the directors in order to defeat his contract. But whenever a power intervenes, over which he can have no control, to alter in a material point the character of his contract without his assent, actual or implied, such intervention works his release. As, where, by Act of the General Assembly, a turnpike company was authorized to alter the termini of its road ; in that case it was held that a subscriber to its stock was released from his contract of subscription : Turnpike Co. *v.* Phillips, 2 Penna. R. 184 ; Plankroad Co. *v.* Arndt, 7 Casey 317. The reason for this is, that such termini form part of the conditions which enter into the contract, and as the supreme power, over which the subscriber has no control, intervenes to alter such conditions, he is thereby released. A contrary doctrine would involve the unreasonable supposition that a contract might be imposed upon a party who never assented thereto.

We now come to the application of these principles to the case in hand. It is conceded that this company was fully organized at the time the subscription in controversy was made. It was erected by the Act of March 17th 1871, with an authorized capital

of $500,000, and as much more as the stockholders might think necessary to complete and equip their road. It was empowered to build a railroad from any point "beginning at or near the city of Philadelphia, thence by such practicable route, with moderate grades, as will, in the opinion of the president and directors, most conduce to the public interest, terminating on some point on the Pennsylvania Central Railroad, east of Downingtown station, in the county of Chester, in such manner as to connect with the said Pennsylvania Railroad."

In the contract of subscription, signed by the defendant, the route and terminal points of the road are thus described : " Commencing at a point on the Pennsylvania Railroad at or near Hestonville, thence by the most practicable route to the valley of Cobb's creek, thence along Cobb's creek to a point near City avenue, thence across the West Chester Turnpike road to Naylor's run, and by the south branch through Pritchett's farm to Darby creek, and along the valley of said creek to Fawkes's run, thence along Fawkes's and Caley's runs to Newtown Square, thence *via* Sugartown and Goshenville by the most expedient route to be surveyed, to West Chester, and from thence to Downingtown, as soon as sufficient funds shall be subscribed to carry on the work." By this the company undoubtedly agreed that the road shall begin and terminate in certain points therein set forth, and that it shall, when built, occupy the route indicated.

These matters form part of the contract : Plankroad Co. *v.* Arndt, *supra ;* and if the company has determined to abandon either of the termini or any material part of the route, as set forth in the contract, the defendant is, thereby, released from his obligation. Of this the minutes of the company were evidence ; hence the second and fourth points of the defendant should have been affirmed. If the above stated doctrine be not correct, then has the defendant no remedy ; for as the directors, in changing the route of their road, are acting within the powers conferred by the charter, he cannot prevent such change, though violative of the terms of the contract. He, therefore, occupies much the same position in which, as we have shown, the general stock subscriber is placed when such change is made by virtue of an Act of Assembly. The defendant's offer, in which he proposed to show that the directors of the company plaintiff, or some of them, assured him, at the time he made his subscription, that the work would not be undertaken, nor the money called for, until bonâ fide subscriptions to the amount of $150,000 had been procured, ought not to have been overruled, for, as we understand the matter, it was one of the inducements by which his signature to the contract was obtained. There was, indeed, in this offer, nothing contradictory of the written instrument; it was, rather, explanatory. The writing reads, " as soon as sufficient funds shall be subscribed to carry on the

30 P. F. SMITH—24

[Caley *v.* Phila. & Chester County Railroad Co.]

work." This language is quite ambiguous. Would $500 be "sufficient funds," or $500,000? And what are we to understand by the phrase "to carry on the work?" Is the idea fulfilled by a preliminary survey, or is it thereby intended that the whole work shall be put in such a condition as to give a reasonable assurance of its final completion? And what more reasonable than that a subscriber, who did not want his money to be squandered on a mere idle experiment, should inquire about the amount necessary to put the undertaking properly under way, and insist upon the assurance that until such amount was subscribed he should not be called upon to pay?

Nothing is better settled in this state than that not only can the ambiguities of a written instrument be explained by parol, but it may, in the same manner, be varied, added to, or even contradicted where it is shown that but for the oral stipulations, made at the time, the party affected would not have executed it. The authorities for, as well as the reasons given in support of this doctrine so abound in our books, that to cite the former, or to restate the latter would be but a waste of time. But, it is said, this corporation was not bound by the declarations of its agents, they having exceeded their authority, and hence it was under no legal obligation to fulfil their undertakings. Grant this to be so; but how, then, can it hold the defendant to his part of the covenant? This plea would answer an excellent purpose were Caley seeking to enforce the contract against the company, but it so happens that the stick is in the other hand. "If one party be not bound, neither is the other;"· Strong, J., in the case of the Railroad Co. *v.* Stewart, 5 Wright 54. In this respect a corporation differs nothing from a natural person; if it would enforce the contracts of its agents it must first agree to adopt and be bound by them. In the foregoing we have discussed all the exceptions which we deem material or well taken; the rest are dismissed without further comment.

The judgment is reversed, and a *venire facias de novo* awarded.