454

Metropolitan Refining Company, Inc., v. Beaver Valley Mill
Supply Company.

*Moore & Moore*, for plaintiff; *Martin, Swaney & Ewing*, for defendant.

READER, P. J., April 10, 1930.—The above entitled case is before us on a motion for judgment for want of a sufficient affidavit of defense.

The action was brought by the plaintiff to recover from the defendant the sum of $522.50, claimed as a balance due upon the sale by plaintiff to defendant of certain materials. The contract for the sale of the materials is alleged

to have been in writing, and a copy of it is attached to the plaintiff's statement. It is alleged that the goods were sold and delivered pursuant to the contract in writing, and that the amount claimed is the balance due on the purchase price.

The affidavit of defense admits the execution of the agreement or written order attached to the statement and above referred to. It is averred, however, that the execution of the said contract was procured by fraud actually practiced by the plaintiff upon the defendant through plaintiff's selling agent. It is further averred that on Aug. 15, 1928, the plaintiff's agent proposed to defendant that it purchase a certain amount of the plaintiff's product on trial for a period of ninety days; that defendant authorized plaintiff, through its agent, to ship a certain quantity of plaintiff's products to defendant on trial for said period of ninety days, but that when said order was submitted to the plaintiff it refused to accept the order and declined to make shipment. It is further averred that, on Aug. 20, 1928, the agent of the plaintiff again called upon the defendant for the purpose of securing an order for the plaintiff's product. It is averred that on this occasion the plaintiff's agent stated to defendant that he had at that time valid outstanding orders from a number of purchasers of plaintiff's product, these purchasers being named in the affidavit of defense, and that if defendant would give the plaintiff an order for the amount and kind of product set out in the contract attached to the plaintiff's statement, defendant would be appointed agent for the plaintiff's product in Beaver County, and that the said orders would be turned over to the defendant to be filled by him from the product that he was to secure by virtue of said contract. It is further averred that defendant, relying upon the truth of these statements of the plaintiff's agent with reference to these existing orders for part of the product the defendant was agreeing to purchase, executed and delivered the contract in suit, and at the time of the execution thereof was given by plaintiff's representative a list of the names of persons and firms who, as the agent said, had given said orders. It is further averred that defendant requested plaintiff's agent to include said orders in the written agreement and to make them a part of it, but that said agent stated that it was unnecessary; that the orders were good and no difficulty would be had with them.

It is further averred that when the products covered by the contract attached to plaintiff's statement were received by the defendant, defendant delivered to the persons and firms the amount of the product that the plaintiff's agent had represented they had ordered and purchased from him. In all instances, it is averred, the persons and firms to whom the product was delivered denied having purchased the same from plaintiff's agent, or any one else, and stated that the statements of plaintiff's agent to the effect that they had purchased these goods were false and untrue. It is averred that defendant was required, for these reasons, to retake the product from the premises of all of the persons to whom it had delivered such product by virtue of the statements of plaintiff's agent that orders for the goods had been given by such persons. It is further averred that defendant notified plaintiff's agent that all of the persons named by him had repudiated his statements that orders had been given by them; and demand was then made upon the plaintiff to make good its undertaking; and when, after a reasonable length of time, nothing had been done by the plaintiff, it was notified that the goods were held subject to its order, and that defendant would not pay therefor. It was averred that the statements made by plaintiff's agent to defendant as to the alleged existing orders at the time the contract in suit was entered into were false and fraudulent representations, known by the plaintiff's agent to

be such; that they were relied upon by the defendant, and induced the defendant to enter into the contract.

In support of the motion for judgment for want of a sufficient affidavit of defense, plaintiff urges that the allegations of the affidavit of defense are so inconsistent with the terms of the written contract that they cannot be proven to establish a contemporaneous parol agreement upon the strength of which the written contract was entered into. Our attention is called to cases holding that if the subject-matter of the oral contract is covered in writing a breach of faith or failure to perform an agreement which induced the execution of the writing is not such a fraud as will justify the court in setting aside the contract; and that evidence of a contemporaneous parol agreement will not be received if it varies or extends the terms of the written agreement: Wolverine Glass Co. *v.* Miller, 279 Pa. 138; Gianni *v.* Russell, 281 Pa. 320. As we understand the affidavit of defense, however, it does not attempt to introduce the defense of a contemporaneous parol agreement as modifying the terms of the written agreement.

The rule with reference to the effect of a contemporaneous parol agreement is, that where one has secured the execution of a written agreement through the inducement of such contemporaneous parol agreement, and then attempts to enforce the written agreement in violation of the terms of the parol agreement, his conduct in this respect will be regarded as a fraud upon the other party to the contract, and the latter may defend against the enforcement of the written contract, in so far as it is contrary to the terms of the parol agreement which induced it. In the instant case it seems to us that the defense is not that the plaintiff is attempting to use the written contract contrary to the terms of the parol contemporaneous agreement, but that the defendant was induced to enter into the written contract by actual representations as to matters of fact which were false and fraudulent as against the defendant. This defense is of a different character from that based upon the attempted use of a written agreement inconsistent with the terms of a parol agreement which induced the former.

Where one is induced by false and fraudulent representations to enter into a contract, he may, upon discovery of the fraud which led him into the contract, rescind the same and refuse further compliance therewith, in which case he may defend against the collection of any purchase price he may have agreed to pay, on the ground of such false and fraudulent representations. If, when the fraud is discovered, the contract has already been complied with, or so far complied with that he cannot advantageously withdraw from it, he may maintain an action of deceit to recover any damages he may have suffered on account of the contract and resulting from the fraud practiced upon him. The general rule as to the right of action for fraud inducing one to enter into a contract is thus stated in 12 Ruling Case Law, 239:

"The law requires good faith in every business transaction, and does not allow one intentionally to deceive another by false representations or concealments, and if he does so it will require him to make such representations good, but it does not make one party to a contract responsible in damages for every unauthorized, erroneous or false representation made to the other, although it may have been injurious. The ground of the action of deceit is fraud and damage, and when both concur the action will lie. Moreover, both must concur to constitute actionable fraud, a common statement of the rule being that neither fraud without damage, nor damage without fraud, is sufficient to support an action. The essential elements required to sustain an action for deceit are that the representation was made as a statement of fact,

which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage."

Again, in 4 Ruling Case Law, 495, the rule is stated as follows:

"In harmony with these principles, courts of equity will cancel contracts on the ground of false representations constituting an inducement to the contract, and on which the injured party had a right to rely, especially where such representations are peculiarly within the knowledge of the party making them."

If such representations were made to defendant as are averred in the affidavit of defense; if they were false, and were made by the plaintiff recklessly or carelessly, and without knowledge of their truth or falsity, and if the defendant was induced by them to enter into the contract, this situation would justify a rescission of the contract by the defendant and would constitute a defense to the action of the plaintiff to recover the balance of purchase money. The rule is more favorable to one who is seeking to defend against the enforcement of a contract procured by such fraud than to one seeking to recover in an action of deceit against the person alleged to have made the false representations. "A distinction is made in some cases according to the nature of the relief sought, and it is held that, though a misrepresentation without knowledge of its falsity may entitle the purchaser to equitable relief by way of rescission, it will not furnish ground for an action for damages for fraud or deceit:" 27 Ruling Case Law, 358.

In the case of Bower v. Fenn, 90 Pa. 359, it appeared that Bower sold the stock, fixtures, lease and good-will of his drug store in Philadelphia to Fenn, making certain representations of fact as to the value of the stock and fixtures contained in his drug store. Fenn, who had no experience or knowledge in such matters, relied upon the representations of Bower, and made but a slight examination of the store, and no inventory of the stock, and purchased the stock, fixtures, lease and good-will of the store. Part of the purchase price was paid in cash, and the balance was secured by a mortgage given by Fenn and his wife upon certain real estate, the title to which was in the wife. Upon an attempt by Bower by an action of ejectment to enforce the payment of the mortgage, it was held that defense could be made to the same on the ground that the execution of the mortgage had been induced by the fraudulent representations of Bower. The court said upon the question there involved (page 362):

"It will be observed that this point is put upon the ground that Fenn relied upon the statements concerning the value of the property, made by Bower, and, consequently, that he dealt upon the faith of those representations. This, of course, means that Fenn was induced to depend upon Bower's knowledge of the stock, and to trust to that knowledge rather than to information which he might have acquired by an inventory, or by other means. This statement of the question, however, settles the controversy adversely to the point put, for if, as the jury have found, the statements, made by the plaintiff, of the value of the property were false in fact, his belief that they were true was of no consequence; for, because of such belief, they were none the less false, neither was Fenn the less deceived thereby. If Bower chose to permit Fenn to contract with him on the faith of his statements of value, he was bound not merely to believe, but to know, that they were true. This very point is ruled in the case of Fisher v. Worrall, 5 W. & S. 478, wherein it was held that a misrepresentation by a vendor of an occult quality in land, though it may

have been made in ignorance of the truth, and although the vendee agreed to run the risk of this, was, in an action for the recovery of the purchase money, a decisive objection to the plaintiff's recovery. Here, as in the case in hand, the contract resulted from the plaintiff's representations, which, in the end, turned out not to be true; without these, the contract never would have been made; hence, without regard to his belief, the plaintiff was responsible for their verity. The best, indeed, that can be said for Bower is, that he asserted for truth what he did not know to be so, but this, as is ruled in the case above cited, is equivalent to the assertion of a known falsehood."

In the instant case it seems to us there can be no question that if the statements alleged to have been made by the agent of the plaintiff to the defendant were actually made by him, he could not well have been ignorant of their truth or falsity. Further discussion of the rule of law above stated will be found in 28 L. R. A. (N. S.) 201, note on page 204; Babcock v. Case, 61 Pa. 427; Sutton v. Morgan, 158 Pa. 204; Ohlbaum v. Mayer, 285 Pa. 260.

It is further contended by the plaintiff that the defense above referred to is in this case precluded by the provisions of the contract sued upon. The terms of the contract referred to are found in paragraph 8, which reads as follows:

"8. The foregoing embodies all the terms and conditions of this agreement. Any further agreements to be recognized must be incorporated both on the original and duplicate of this agreement."

Our attention is called to the line of cases holding that such a provision in a contract prevents the introduction of evidence tending to establish a contemporaneous parol agreement, the effect of which would be to introduce other terms into the contract. We have examined many of the cases, of which the following are typical: Ridgeway Dynamo & Engine Co. v. Penna. Cement Co., 221 Pa. 160; S. Morgan Smith Co. v. Monroe County Water Power & Supply Co., 221 Pa. 165; General Motors Truck Co. v. Philadelphia Paving Co., 248 Pa. 499; Gross v. Exeter Machine Works, Inc., 277 Pa. 363; Hauer v. Martin, 284 Pa. 407; Tranter Manuf. Co. v. Blaney, 61 Pa. Superior Ct. 379; Philadelphia & Gulf S. S. Co. v. Pechin, 61 Pa. Superior Ct. 401; Outcault Adv. Co. v. Ritchey, 63 Pa. Superior Ct. 597; Oxweld Acetylene Co. v. Hastings, 71 Pa. Superior Ct. 178; Holcomb & Hoke Manuf. Co. v. Gamba, 80 Pa. Superior Ct. 191. Our examination of these cases satisfies us that the rule therein stated is a rule established to prevent the breaking down of written contracts by the introduction of terms existing in parol only, and to give effect to a written provision in the contract itself that no terms of the contract exist except those found in the written contract.

The defense of actual fraud inducing a party to enter into the contract, the effect of which is not to vary the terms of the written contract by adding to or taking from them, but to defeat it altogether on the ground that it is the result of fraud, is not precluded by the rule above stated. It is not within the scope of the rule. This principle is well stated in the language of Chief Justice Rugg in the case of Butler v. Prussian (Mass.), 147 N. E. Repr. 892. In this case the contract in suit contained a provision even stronger than that found in the contract sued upon in the instant case. The defense of actual fraud in procuring the execution of the contract was raised, and of this defense the court said:

"Fraud which enters into the making of a contract, as distinguished from that which is antecedent to it, cannot be excluded from the reach of the law by any form or phrase inserted in the contract itself. Parties may stipulate by their contract that the statements inducing its execution are all included

in its recitals and that no agent has authority to make any representations not therein contained, but they cannot by written words prevent the law from inquiring into and granting redress for fraud which enters into the very substance of the contract itself."

The rule is stated to the same effect in other cases from other jurisdictions called to our attention by counsel for the defendant, among which are: Elliott Supply Co. v. Green (N. D.), 160 N. W. Repr. 1002; Hetrick v. Gerlinger Motor Car Co., 164 Pac. Repr. 379; Scarsdale Publishing Co. v. Carter, 116 N. Y. Supp. 731; Simpson v. Case Co., 170 N. Y. Supp. 166.

For the reasons stated, we are of the opinion that the rule invoked by the plaintiff based upon the term of the contract above quoted is not applicable to the defense raised by the affidavit of defense in the instant case.

It seems to us that the defense set out in the affidavit of defense is permissible upon another ground. It is evident that defendant became interested in the product of the plaintiff with a view of dealing in it and selling it to its own customers. The representation by the agent of the plaintiff company, if made, to the effect that orders had already been received by him for the sale of a considerable part of the product which defendant was about to contract to buy, would seem to us to be a very material part of the consideration for the entering into the contract on the part of the defendant. To have these sales already effected before the delivery of the goods to the defendant would to this extent mean to the defendant the saving of the cost of making sales. It would constitute a direct pecuniary advantage to the defendant. A failure on the part of defendant to receive the advantage represented by these sales already made would be to that extent a failure of the consideration of the contract.

It is always permissible to show by parol testimony what the true consideration for a contract is. The consideration stated in a written instrument is only presumptive evidence of the real consideration, and it may be overcome by parol evidence of another consideration, greater or less, if not directly inconsistent with the instrument. This rule of the law is established by a long line of cases. It is thus stated in Cridge's Estate, 289 Pa. 331, 338:

"A distinction has, however, been drawn in the decisions, where the effort is made to show by parol the true purchase price. 'The amount of the consideration in a contract, whether large or small, does not usually affect the covenants of the parties, and, therefore, the fact that there was some other or different consideration than that expressed in writing may be orally shown, the consideration mentioned being held only presumptive evidence that it is the real one:' Henry on Trial Ev., 383. Thus it has been held permissible to prove that the sum named was more than that stipulated for in the deed, and that additional amounts were to be paid (Piper v. Queeney, 282 Pa. 135; Croyle v. Cambria L. & I. Co., 233 Pa. 310; Potter v. Grimm, 248 Pa. 440; Faux v. Fitler, 223 Pa. 568; Henry v. Zurflieh, 203 Pa. 440; Patterson's Estate, 86 Pa. Superior Ct. 299), that other obligations not named have been assumed (Buckley's Appeal, 48 Pa. 491), or that there was no money consideration, though one is named, the transaction constituting a mere gift (Audenried's Appeal, 89 Pa. 114; Lewis v. Brewster, 57 Pa. 410), or that there was a limitation on seeming liability: Humbert v. Meyers, 279 Pa. 171."

It is further contended by the plaintiff that it does not appear that the selling agent of the plaintiff had any authority to make such representations as are alleged in the affidavit of defense or that the plaintiff ever ratified such statements if made. We are of the opinion, however, that if such statements

as are alleged in the affidavit of defense were made by plaintiff's agent to the defendant and induced the execution of the contract in suit, the adoption of the contract itself by plaintiff, its conduct pursuant to the contract, and its institution of this action to enforce the contract, constitute an adoption by the plaintiff of the representations made by its agent to secure the execution of the contract.

In the case of Singer Manuf. Co. v. Christian, 211 Pa. 534, the plaintiff sued to recover the purchase price of certain machinery sold to the defendant. The defendant resisted the collection of the purchase money on the ground that the agent of the plaintiff in making the sale to defendant had represented to defendant that the plaintiff company would furnish to defendant work continuously for all the machines sold to him at profitable prices, and that he would not be responsible to the plaintiff except that out of the net profits realized by the work furnished by the Singer Manufacturing Company payment should be made. The defendant averred that the contract had been broken by the failure of the plaintiff to furnish such work, by reason of which the machinery had been idle in the defendant's hands for a considerable time and sufficient profits had not been made to pay the purchase price of the machinery. It was contended by plaintiff that it was not within the authority of their agent to enter into such a contract. The court said, however:

"The plaintiff in the present action is seeking to enforce the contract made by its agent, and even if as a matter of fact that agent exceeded his authority, yet if the plaintiff company seeks to take the benefit of the bargain so made, it must adopt the contract as its agent made it: Keough v. Leslie, 92 Pa. 424; Caley v. Phila. & Chester County R. R. Co., 80 Pa. 363. This principle is very well stated in Bristow v. Whitmore, 9 H. L. Cases, 391, wherein Lord Kingsdown said: 'The principal cannot approbate and reprobate the contract. He cannot at the same time take the benefit which it confers and repudiate the obligation which it imposes.'"

In the case of Caley v. Phila. & Chester County R. R. Co., 80 Pa. 363, Caley had subscribed for certain shares of stock of the railroad company and was sued for certain instalments upon the stock. His defense was that the subscription was made upon certain conditions as to the location of the railroad and its termini, and also upon representations made by the chief officers of the railroad with reference to the location of the road and to the effect that the work would not be undertaken nor the money called for until subscriptions to the amount of $150,000 had been procured. It was held that the subscription was conditional and that the contract of subscription could not be enforced if the railroad company failed to comply with the conditions. It appeared that the location of the railroad had been changed to some extent subsequent to the making of the subscription, and that the subscriptions had not amounted to the sum of $150,000 prior to the calling of the instalments of the defendant for which suit was brought.

In the case of Keough v. Leslie, 92 Pa. 424, the suit was upon a written contract appointing the defendants agents of the plaintiff to sell certain patterns furnished by the plaintiff. The contract provided for the purchase of $300 worth of patterns by the defendant. In an action by the plaintiff to recover on this contract for the patterns sold, defendants set up in defense a representation made by the agent of the plaintiff at the time of entering into the contract, and as an inducement thereto, to the effect that defendant would be required to pay only for such patterns as he actually sold, and at the end of the year, if the transaction was not a success, the plaintiff would take back

the patterns then on his hands and the defendant would be at no loss. It was held that the defense might be shown, and that if the representations were made by plaintiff's agent, although beyond his authority, plaintiff would be bound by them if it undertook to enforce the contract of sale.

In the case of Federal Sales Co. *v.* Farrell, 264 Pa. 149, the suit was upon a note given in the course of a transaction resulting in the leasing of four automobile trucks by four written agreements. The defense was, in part, that certain provisions were omitted from the agreements by mistake, and, further, that defendant was induced to enter into the agreements by certain oral warranties made by plaintiff's agent. The plaintiff admitted that certain warranties were made, but denied the authority of its agents to make the warranties set up by the defendant; and the court said:

". . . but if the contract was induced by those warranties, as we must assume to be true on a rule for judgment for want of a sufficient affidavit of defense, it is a matter of indifference whether or not the agents had such authority, for plaintiff cannot enforce the contract induced by the warranties and deny the right to make them: Singer Manuf. Co. *v.* Christian, 211 Pa. 534."

In the case of Danish Pride Milk Products Co. *v.* Marcus, 272 Pa. 340, the defendants gave the plaintiff, through its agent, a written order for 800 cases of a certain brand of condensed milk at $5 per case, subject to the plaintiff's confirmation. This confirmation was given, the milk was shipped to Pittsburgh, where it arrived and was received by the defendants. In defense to an action for recovery of the purchase price, defendants averred that they had expressed to plaintiff's agent doubt as to their ability to sell the same, and gave the order only because of a verbal agreement then made by the agent that plaintiff would take off their hands all of the 800 cases which they were unable to sell, and that they were only able to sell sixty cases. Evidence offered at the trial in support of this alleged verbal agreement was excluded by the court. This was held to be error, and the court said, among other things: "As plaintiff confirmed the order taken by the agent and retained the benefit thereof, it cannot repudiate his authority to make the alleged oral agreement." See, also, Ohlbaum *v.* Mayer, 285 Pa. 260.

We think the instant case is, in the respect now under consideration, governed by the cases last above cited. The representations alleged to have been made by plaintiff's agent related directly to the subject-matter of the contract itself. If they were an inducement to the execution of that contract, they were adopted by the plaintiff itself, even though not within the scope of the agent's authority, when the plaintiff adopted and undertook to perform, and later to enforce, the contract itself.

For the reasons above stated, we are of the opinion that the affidavit of defense states a defense which, if proven by competent and sufficient evidence, will constitute a valid and effective defense under the law.

*Order.*

Now, to wit, April 10, 1930, for the reasons stated in the foregoing opinion, the rule for judgment against the defendant for want of a sufficient affidavit of defense is discharged and judgment is refused.

From Wm. F. Schutte, Beaver Falls, Pa.